UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————X

FRANCISCO MERCADO TORRES, Jr.,

        Plaintiff,

-against-

GLEN GOORD, Commissioner;
DENNIS BRESLIN, Superintendent;
ROBERT MORTON, Deputy Superintendent;
LASSITER, Guard; HESSON, Counselor,

        Defendants.
———————————————————X

**MEMORANDUM
AND ORDER**
05-CV-3677 (ERK)

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 26 2005 ★

P.M. _____
TIME A.M. _____

KORMAN, Ch.J.

    Plaintiff, a prisoner incarcerated at Arthur Kill Correctional Facility ("Arthur Kill"), brings this action *pro se* pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), alleging that defendants violated his civil rights. Plaintiff seeks $2,000,000 in damages and injunctive relief. The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). For the reasons set forth below, plaintiff's complaint is dismissed in part and plaintiff is directed to submit an amended complaint within thirty (30) days of the date of this Order.

**BACKGROUND**

    Plaintiff alleges that he is a "Puerto Rican ... with disabilities," Compl. ¶ 32, whose rights have been violated since his arrival at Arthur Kill on June 10, 2004. Id. ¶ 9. Plaintiff alleges that he suffers from rheumatoid arthritis and numbness in his legs, prohibiting him from "bending, climing [sic], twisting, sitting and walking." Id. ¶¶ 11. Plaintiff, however, does not allege that plaintiff's denied him medical treatment; rather, he alleges that defendants have violated his rights in the following manner.

First, plaintiff alleges that on June 10, 2004, he was placed in "double-celling housing" at Arthur Kill with an inmate infected with the AIDS virus who would "cougth [sic], and spit in the plaintiff's living area directing the Aids virious [sic] toward the plaintiff." Id. ¶ 6. Plaintiff alleges that he "suffered humiliation when the Aids Infected inmate threaten to rape his mother and sisiter [sic] and cause bady [sic] harm to the plaintiff by threats of incerting [sic] his penis the plaintiff's mouth while plaintiff slept." Id. ¶ 7. Plaintiff alleges that he was transferred to a different cell in another complex around November 2004, when he began participation in "the A.S.A.T. drug treatment program." Id. ¶ 10. Furthermore, plaintiff alleges that on March 13, 2005, Deputy Superintendent Lassiter disregarded plaintiff's physical condition and ordered that plaintiff could only practice his musical instrument in the music room, which is only accessible by climbing stairs. Id. ¶ 26.

Plaintiff alleges that he filed an administrative grievance regarding his housing and Lassiter's actions, but that he was "deprived of an administrative process." Id. ¶ 12. In particular, plaintiff alleges that defendants Lassiter and Hesson "introduced false statements of fact that resulted in plaintiff's grievance determination being arbitrary and capricious." Id. The Department of Correctional Services ("DOCS") denied plaintiff's grievance, noting that their investigation revealed that the "allegations of staff misconduct could not be substantiated." Id., Ex. A. Plaintiff alleges that he appealed the denial of his grievance on March 21, 2005, but that he has not yet received a response. See id. According to plaintiff, defendants "precluded him from participating [sic] equally in programs as all other inmates are entitled to[] in Violation of Due Process, Equal Rights and Equal Protection in an administrative process." Id. ¶ 32. Plaintiff argues that "it is the policy and practices of [DOCS] to authorize[] certain gurad [sic] and personal [sic] including Lassiter, Hesson, to deny and privent [sic] the plaintiff to a right of

2

equal protection and equal rights under the consts [sic]." Id. ¶ 46.

**DISCUSSION**

A.  Standard of Review

Under 28 U.S.C. § 1915A, this Court has the authority to review a prisoner's complaint in order to identify any cognizable claims or dismiss the complaint, or any portion thereof, if it: (1) is frivolous, malicious or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief. As plaintiff is proceeding *pro se*, this Court is obliged to construe his pleadings liberally, particularly as they allege civil rights violations. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004) (citing Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001)). Thus, this Court must interpret plaintiff's pleadings as raising the strongest argument they suggest. Id. Furthermore, the Second Circuit has held that "a *pro se* plaintiff who is proceeding *in forma pauperis* should be afforded the same opportunity as a *pro se* fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000) (quoting Gomez v. USAA Federal Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999)).

Plaintiff alleges that defendants violated his rights under 42 U.S.C. § 1983 by: (1) placing him in the same cell as an AIDS-infected inmate; and (2) interfering with his grievance process. Plaintiff also alleges that defendants violated his rights under the ADA by failing to "make services, programs and activities" available to him. Compl. ¶ 33. Plaintiff's complaint, however, fails to state a claim upon which relief may be granted.

3

B.  ADA Claim

Plaintiff's complaint fails to allege the prima facie elements of an ADA claim. Title II of the ADA applies to inmates in state prisons. See Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998). To state a claim under Title II of the ADA, a prisoner must show: "(1) he or she is a 'qualified individual with a disability;' (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) the entity [that] provides the service, program, or activity is a public entity." Clarkson v. Coughlin, 898 F. Supp. 1019, 1037 (S.D.N.Y. 1995). See 42 U.S.C. § 12132; Burgess v. Goord, No. 98 Civ. 2077, 1999 WL 33458, at *6 (S.D.N.Y. Jan. 26, 1999).

Plaintiff alleges that his rights under the ADA were violated when defendants failed to place him in a single cell and disallowed him from practicing his musical instrument except in the designated music room. Plaintiff's complaint as presently alleged, however, does not claim he was denied access to a service, program, or activity because of his disabled status. See Devivo v. Butler, No. 97 Civ. 7919 (HB), 1998 WL 788787, at *4 (S.D.N.Y. Nov. 10, 1998) (dismissing vision-impaired inmate's ADA claim based on failure to allege that denial of prison service, program, or activity occurred because of disability). Although plaintiff's ADA claim as currently alleged fails to state a claim upon which relief may be granted, he shall be afforded thirty (30) days to file an amended complaint regarding this claim. See Cruz, 202 F.3d at 597-98.

C.  Section 1983 Claims

1.  Personal Involvement

To state a cognizable claim under § 1983, a plaintiff must allege that he was deprived of his rights secured under the Constitution and laws of the United States by a defendant acting under color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. See

4

Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 155-57 (1978); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Dwares v. City of New York, 985 F.2d 94, 97 (2d Cir. 1993). It is well settled in this Circuit that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001) (citations omitted). Plaintiff identifies defendants Lassiter and Hesson as the only individuals personally involved in the deprivation of his civil rights. Apart from conclusorily alleging that defendants Goord, Breslin and Morton "authorized" Lassiter and Hesson to act in violation of his civil rights, Compl. ¶ 46, plaintiff does not allege that Goord, Breslin or Morton were personally involved in the events underlying his complaint. As such, plaintiff's § 1983 claims against defendants Goord, Breslin and Morton are dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

2. Due Process Claim

Plaintiff alleges that defendants Lassiter and Hesson violated his due process rights when they interfered with his grievance filed with the Inmate Grievance Program. Plaintiff alleges that defendants "interfered with the rule making process" by deliberately misrepresenting the substance of his complaint and introducing "false evidence" and "non-existent facts." Compl. ¶¶ 30-31. As a result, according to plaintiff, his grievance was denied. Plaintiff's claim under § 1983 is based on the Due Process Clause of the Fourteenth Amendment.

The Due Process Clause provides that no State "shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Supreme Court has established a two-step test in order to determine whether a plaintiff has stated a valid due process claim. First, a plaintiff must allege that he or she possesses a constitutionally protected liberty or

5

property interest that has been interfered with by the state; second, the court examines what process the state provided and whether it was constitutionally adequate. See Zinnermon v. Burch, 494 U.S. 113, 125 (1990) (holding that what is unconstitutional in a procedural due process claim is the deprivation of a constitutionally protected interest in life, liberty or property without due process of law).

Plaintiff fails to state a claim upon which relief may be granted, as he "has failed to identify a liberty interest protected by the Due Process Clause." Odom v. Poirier, No. 99 Civ. 4933 (GBD), 2004 WL 2884409, at *10 (S.D.N.Y. Dec. 10, 2004) (citing Williams v. Goord, 111 F. Supp. 2d 280, 288 (S.D.N.Y. 2000)). "Prison grievance procedures do not confer any substantive right upon an inmate requiring the procedural protections envisioned by the Fourteenth Amendment." Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (citations omitted); see also Mahotep v. DeLuca, 3 F. Supp. 2d 385, 390 n. 3 (W.D.N.Y. 1998) (dismissing plaintiff's claim that the director of the Inmate Grievance Program violated his due process rights by lying and forging documents and by failing to conduct a fair and impartial investigation). Accordingly, plaintiff's allegations against Lassiter and Hesson regarding their role in the grievance process do not give rise to any due process claim. See Odom, 2004 WL 2884409, at *10; Torres, 246 F. Supp. 3d at 342 n. 1; Mahotep, 3 F. Supp. 2d at 390 n. 3. Therefore, plaintiff's due process claim against defendants Lassiter and Hesson is dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(1).

3. Eighth Amendment Claim

Plaintiff claims that his civil rights were violated when he was assigned to a double cell with an AIDS-infected inmate for a period of approximately five months. Although plaintiff

does not cite to the U.S. Constitution, his claim under § 1983 is based on the Eighth Amendment's proscription against cruel and unusual punishment.

First, the "housing of two inmates in a single cell is not per se cruel and unusual punishment prohibited by the Eighth ... Amendment[]." Bolton v. Goord, 992 F. Supp. 604, 626 (S.D.N.Y. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981)). Nevertheless, the Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)). This duty includes protecting inmates from harm at the hands of other inmates. See id.; Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir.1997). To establish a constitutional violation, a prisoner must show that he was "incarcerated under conditions posing a substantial risk of serious harm," Farmer, 511 U.S. at 834, and that the prison official showed "deliberate indifference" to the prisoner's health or safety. Deliberate indifference exists where "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; see Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (holding that prison official possesses culpable intent to support a claim of deliberate indifference where he "has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm").

The Supreme Court has recognized that exposure to contagious diseases may violate the Eighth Amendment if prison officials, acting with deliberate indifference, expose a prisoner to a sufficiently substantial "risk of serious damage to his future health." Helling v. McKinney, 509

U.S. 25, 35 (1993) (holding that exposure to environmental tobacco smoke states an Eighth Amendment cause of action even though inmate was asymptomatic because the health risk posed by involuntary exposure to second hand smoke was "sufficiently imminent"). The Supreme Court also noted that inmates were entitled to relief under the Eighth Amendment where they proved threats to personal safety from the mingling of inmates with serious contagious diseases. See id. at 33.

Courts have held that a prisoner may state an Eighth Amendment claim where he establishes that he was forced to share a cell with an inmate infected with a serious contagious disease that is spread by airborne particles, such as tuberculosis. See Bolton, 992 F. Supp. at 628. However, the AIDS virus is not such a communicable disease, and confinement in the same cell as an HIV-positive inmate does not violate the Eighth Amendment. Bolton, 992 F. Supp. at 628 (finding that inmate was not injured by exposure to HIV- positive inmate in double cell because HIV is not airborne or spread by casual contact).

Here, plaintiff alleges that his cell mate coughed and spit in the cell and threatened to insert his penis in the plaintiff's mouth while plaintiff slept. Compl. ¶ 7. Plaintiff alleges that the two shared the cell for approximately five months and that he has since moved to another cell. Id. ¶ 10. These allegations on their own fail to state an Eighth Amendment claim. Nevertheless, as detailed below, plaintiff will be allowed an opportunity to amend his claim. See Cruz, 202 F.3d at 597-98.

D.  Leave to Amend

Plaintiff shall be afforded thirty (30) days to file an amended complaint. Plaintiff may replead his ADA claim. Plaintiff may also replead his Eighth Amendment claim to explain how